Gaston, Judge,
dissented, and delivered the following opinion.
After a very anxious consideration of this case, and frequent and full conferences with the other members of this Court, I cannot bring my mind to concur in the judgment which has been rendered. In a matter of so much concern to the community, and of such immense consequence to the prisoner, I feel it a duty to state distinctly the point on which I differ from my brethren, and to assign succinctly the reasons on which that dissent is founded.
If the indictment had contained no other charge’against the prisoner than that for larceny, I should, with them, have thought the instruction of the judge erroneous.Whether the evidence established an actual taking of the negro by the prisoner’s associate, before the meeting at Webb’s old field, and showed that his mistress had then lost, and Haney had then obtained the possession, or proved only that the negro had lent a willing ear to the seductions of the tempter, and was ready to go off-, whenever the conspirators should be ready to start on their expedition, was a question of fact for the consideration of the jury ; but the instruction authorized a conviction of the prisoner, whatever might be the conclusion of the jury in regard to that fact. Now, when a crime has been actually committed, no subsequent aid rendered to the;felon, though in pursuance of a previous agreement, will make a person a principal in that felony, who was not either actually or *420 constructively present at its commission. The crime of larceny, consists in the felonious taking and asportation of the personal goods of another from his possession. The *. ° ... carrying away alone, however criminal the intent, will not constitute larceny, unless it accompany the taking from the possession. Larceny includes' the idea of a trespass; and therefore, if the party be guilty of no trespass in taking the goods, he can commit no larceny in carrying them away. One not present at the trespass, is therefore, not a principal in the larceny. But it seems to me that the instruction was correct upon the second count ■of the indictment, and as the, prisoner has been found guilty on both counts, and if the instruction iyere correct, has been properly found guilty on the second, the state was entitled to demand thejudgment which was rendered below.
The second count of this indictment charges, that John Haney and the prisoner, a certain negro slave named Eli, the property of Nancy Davis, and in the possession of the said Nancy, did by seduction and violence take and convey away from the possession of the said Nancy, with an intent to sell the said slave, contrary to the provisions of the act of the'General Assembly, in such case made and provided. The instruction supposed to be, erroneous, was, that if in pursuance of a concerted scheme between Haney and the prisoner, to seduce negro ■slaves from their owners, and convey them to South Carolina for sale, Haney had procured the slave to come to him, and the prisoner received the slave from Haney, conveyed him to South Carolina, and then sold him, the prisoner was guilty of the crime charged. The act is entitled an act to prevent the stealing of slaves, or by violence, seduction, or any other means, taking or conveying away any slave or slaves, the property of another, and fqr other purposes.” The preamble recites “ that it is necessary that the pernicious practice of stealing, or otherwise carrying away slaves, the property of others, as also of stealing and carrying off free negroes and mulattoes, with an intent to sell, should be discouraged by a law with additional penalties,” The statute then enacts, that any person who shall steal, or who shall by violence, seduction, or< any other means, take or convey *421 Ñiwayany slave, the property of another, with intention ■such slave to sell, dispose of to another, or appropriate to his own use; or who shall by violence or any other means, take or convey any free negro or person of mixed blood out of this state, to another, with an intention to sell or dispose of such free negro or person of mixed blood, shall be adjudged guilty of felony, and suffer death without benefit of clergy.
It is indisputable, I think, that the legislature intended that the severe, but necessary penalty denounced in the statute, should apply to others than 'those who should themselves take and carry away the slaves. They meant by this penalty to prevent the practice not only of stealing, but of otherwise carrying away slaves. It has been settled by repeated adjudications, that in pursuance of this intention, they excluded the larceny of slaves, an existing common law felony, from the privilege of clergy; and then proceeded to create a new and capital felony, the taking or conveying aw'ay of a slave by violence, seduction, or any other means for the purpose of dishonest gain. Indeed it is not doubted by my brethren, that the acts of the prisoner are within the mischief which the statute was intended to remedy; but they have felt themselves compelled to save him from the penalty denounced against the perpetrators of such mischief, because the words of the ■statute do not distinctly embrace these acts.
It is manifest that this construction, to all practical purposes, establishes that no new felony was created by the statute. If none can be punished under that act, but he who fakes and carries away the slave of another from his possession, causa lucri, as every such taking and carrying away is larceny, the act fails in discouraging any other means of conveying away slaves, than those which before constituted larceny at the' common law.
A penal statute cannot rightfully be extended by construction, to embrace cases within its spirit if they do not come within its words; but where the words of such a statute, understood in their usual signification, do embrace a case, and there is no sufficient reason to doubt that the case is also within the meaning of the legislature, the will *422 of the law-makers must be executed, although it might have been expressed with greater technical precision.
The act untler examination, declares guilty of felony every person who shall take or convey. Not only then in a popular sense, but according to grammatical strictness, he who conveys is as guilty as he who takes; that is to say, Hardin is as guilty as Haney; “ or” may be construed to mean “ and,” when the context shows that it has been incorrectly used; but it must be supposed to have been correctly used, until the contrary sufficiently appears. In every other instance where “ or” is found in this statute, it has received from the Courts its ordinary interpretation. Thus it has been held, that the words “ violence, seduction, or any other means,” are to be taken disjunctively; so the words with an intention “ to sell, dispose of, or appropriate to his own use.” It is certain that an indictment is good which charges the use of one of these means, with an intention to accomplish one of these purposes, and the only difficulty on the subject has been, whether an indictment is not liable to the objection of duplicity, which charges the use of more means than one, and an intention to accomplish more than one of the prohibited purposes.
What is there in the statute which requires the substitution of “ and” for “or” in this instance? It is not required to effectuate the intention of the law-makers; and I know of no reason besides, which can justify it, unless such substitution be necessary to save the-enactment from absurdity.
I do not see any such absurdity. The word convey is very nearly synonymous with carry, and may be regarded as differing from it principally as indicating more distinctly a motion from one place to another place, or transmission from one person to another person. The legislature has not fixed either terminus of the criminal conveyance, either that at which it begins, or that at which it is' to end. They have made every removal of a man’s slave, with the wicked purpose of depriving the owner of his property, a felony. In their view of the enormity of the criminal practises prevailing, and of the necessity of *423 putting them down by rigorous punishments, it was right so to enact. The practice was equally mischievous, whether the conveyance was made by a trespasser or by a bailee; by the original seducer, or by his. accomplice; whether to another state, or to another part of the same state ; whether to a greater or a smaller 'distance; where, they have affixed no termini, I think the Court ought not to make any.
In the preamble of the act, the term “ carrying away,” is used in regard to slaves, and the term “carrying off,” with respect to free persons, while the term “ convey” is used in the enactments. But little light, it seems to me, is thereby thrown on the meaning of the term “convey.” It is natural to expect more precision of language in the enacting clauses of a statute, than in its preamble. The term convey is, according to my view of it, the most appropriate to express the meaning of those phrases as; used in the preamble. The practice there first spoken of, is not simply that of carrying away slaves, but of stealing or “ otherwise carrying away.” I am at a loss to discover any other mode than stealing referred to, if the conveying by one who has not taken, be not meant. The other practice mentioned in the preamble, is- that of stealing and carrying off free persons. By stealing, as applied to free persons, must be intended taking, for as they are not the goods of another, they cannot be stolen.. Carrying off, was- thought more applicable than carrying away, when the removal contemplated was out of the state. In the body of the act accordingly, when its enactments with respect to free persons are declared, we find the words “ take or convey out of this state to another.” The term “ convey,” as here used, is admitted to apply to those who have not taken, and the disjunctive, or, between take and convey, is to be here understood in its proper sense. It is-not obvious, I think, why the very same phrase, “ take or convey,” in the same sentence, should be differently interpreted.
If the construction of the act which I adopt be correct, it was sufficient for the conviction of the prisoner, that he had acted in the carrying away, though not ih the taking *424 0f the slave. The crime planned by the conspirators— the crime committed — Hhe crime denounced by the law— was remova^ the slave from the owner for sale.. Every one who actually performed a part in the commission of that crime, whether by getting possession of the slave, or by conveying him after the possession was taken,, is, as I believe, guilty as a principal felon, within the' words and meaning of the act; not on the ground of a constructive presence when the acts of his associates, were performed, but because of the acts performed by himself.
Pee CüRiam. Judgriient reversed.